[Crim. No. 6002.   Second Dist., Div. Two.   Dec. 23, 1957.]

THE PEOPLE, Respondent, v. CHARLES VALENCIA et al., Defendants; GILBERT PALACIO, Appellant.

David C. Marcus for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, Acting P. J.—Gilbert Palacio and Charles Valencia were indicted for selling heroin (Health & Saf. Code, § 11500). Both were convicted by the court sitting without a jury. Palacio has appealed.

On February 21, 1957, Deputy Paul Gutierrez, assigned to the narcotics detail of the Los Angeles sheriff's office, went to a barbershop operated by Valencia in East Los Angeles. The officer was accompanied by a confidential informant who introduced him to Valencia. The officer inquired about obtaining some narcotics. Valencia told him to return at 6 p. m. and he would have them for him. Gutierrez and the informant returned at the appointed time and the former asked for the narcotics. Valencia told him they would have to go to his hotel and "his connection would be there." The trio went to the hotel, whereupon Valencia suggested Gutierrez and the informant wait at a small café across the street. After waiting some time, Valencia came to the café and told Gutierrez: "My connection has only six grams and he wants $120.00 for them." Gutierrez stated he would buy them and gave him $150. Valencia went back to the hotel, returning in a few minutes with appellant, at which time a conversation took place between the parties relating to narcotics. In this conversation Gutierrez said to appellant, "I'm a little leery of letting you have the money because I have been burned for my money before," by which he meant that someone had taken his money and given him nothing in return. Appellant replied: "That's not the way I work. I always give something in return." Gutierrez "then asked him if the narcotics were good." Appellant said, "I have real good stuff." Thereupon, Valencia gave appellant $120 of the money Gutierrez had previously handed him. Valencia later returned the balance of the money to Gutierrez. The parties then went to the home of appellant's mother to obtain the narcotics. Appellant suggested that Gutierrez and Valencia ride together and that he would go with the other party. When they reached their destination appellant, Valencia and the informant went into the house. Approximately five minutes later the informant, who had been searched earlier at the sheriff's office, returned to the car and handed Gutierrez 52 capsules containing heroin.

At the trial appellant testified that he had never seen Gutierrez before, and denied having any connection with the transaction.

█ Appellant's initial contention is that the evidence is

insufficient to support the verdict. He argues that there is no evidence in the record which establishes that he was the person who delivered the narcotics to the informant who in turn gave them to Deputy Gutierrez; since the informant did not testify, appellant asserts that his connection with the crime has not been established beyond a reasonable doubt and that he was convicted upon mere circumstantial evidence. Appellant's contention is without merit. An examination of the record discloses ample evidence to support the verdict. The conversation between appellant and Gutierrez clearly indicated that the former was about to sell narcotics to the latter. Appellant assured the officer that he always gave something for the money he received and that his narcotics were "good stuff." Appellant was given the $120 for the narcotics in the officer's presence. Appellant then directed the parties to a house where his mother resided and went in with the informant. A few minutes later the informant returned with the narcotics. Even though the informant did not testify, the logical inference is that appellant sold narcotics to the officer, using the informant as the medium for delivery. In *People* v. *Bradford,* 130 Cal.App.2d 606 [279 P.2d 561], the police officer contacted the defendant by means of an "unnamed informer," through whom the officer paid the money and to whom defendant delivered the heroin. The court held that "the evidence amply supports the verdict" even though the informer did not testify. Because of its close factual similarity to the instant case, the Bradford case lends support to our conclusion that the evidence adequately supports the conviction. ■ Since we must assume in favor of the verdict the existence of every fact which the trier of fact could have reasonably deduced from the evidence (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]), it is clear that the trial court's decision based upon the facts in this case may not be disturbed. And this is so even though some of the evidence is circumstantial. (*People* v. *Newland, supra,* p. 681.)

■ Appellant's next contention is that he was not afforded a fair trial in that the trial court prejudged his case and showed bias against him. He bases this contention on three incidents which occurred during the course of the trial. The first of these took place at the conclusion of appellant's direct examination. At that time the judge observed: "I don't think any cross-examination is necessary." This statement must be viewed in the light of the surrounding circumstances. Appel-

lant's sole defense was based upon his own testimony; that consisted of a denial of any connection whatever with the transaction. In all he answered only 17 questions; his testimony covered but a page and a half of the reporter's transcript. The comment of the trial judge was merely a suggestion in the interest of expediting the trial and does not appear to have been improper in view of appellant's brief testimony. Certainly it does not indicate the judge had already decided the case. This conclusion finds further support in the fact that, upon the completion of the testimony, the trial court invited argument by counsel.

The second incident of which appellant complains took place after the court had found both defendants guilty. It grew out of a discussion between the court and counsel relative to the prior convictions charged against each of the defendants. Three prior convictions, to which appellant had pleaded not guilty, were alleged against him. In discussing the disposition of these prior convictions the court remarked: "Whether they have any priors or not, I am going to send them to prison." This does not indicate unfairness on the part of the trial judge in view of the serious character of the crime and the quantity of heroin involved.

The third incident of which appellant complains relates to the question of referring his case to the probation department. The court suggested that both defendants could save "some dead time" by waiving a probation hearing and being sentenced immediately. In this connection it should be noted that Valencia requested to be sentenced at that time. Appellant argues that the court's suggestion that he waive a probation hearing and be sentenced immediately indicated unfairness. There is no basis for this contention. The court's suggestion was actually in appellant's interest since the time he would spend in jail awaiting sentence would not count on his term of imprisonment. Furthermore, after some additional discussion, appellant waived his right to a probation hearing and expressed his desire to be sentenced immediately.

Appellant next contends that it was error for the court to direct Deputy Gutierrez not to disclose the name of the informant. This contention is clearly without merit. The moment the trial court ruled that the officer did not have to disclose the name of the informant, appellant's counsel drew the court's attention to *People* v. *Lawrence*, 149 Cal.App.2d. 435 [308 P.2d 821], wherein it is held that the refusal by the court to order the officer on cross-examination to identify an

informant who was a participant in the criminal act charged to the defendant is a denial of due process. The trial court immediately ordered the officer to name the informant. The witness knew the informant only by the nickname "Sonny" and was unable to furnish a surname. But this does not alter the fact that the court did require the officer to disclose all the requested information that he had as to the identity of the informant. Although appellant knew one Robert Rivera whose nickname was "Sonny" and admitted he saw Rivera on the day the sale was made, appellant did not call him as a witness.

Appellant also argues that the fact that Deputy Gutierrez could identify the informant only as "Sonny" even though he had worked with the man rendered Gutierrez' testimony "unworthy of belief." ■ But the credibility of the witness was, of course, a matter for the trial court's determination. (*People* v. *Simpson,* 43 Cal.2d 553, 562-563 [275 P.2d 31].)

■ Appellant's final contention is that he was denied a fair trial because he was originally *indicted* but the allegations of his prior convictions were added by way of an "amended information." Appellant's reference is to a clerical error in the minutes where the word "information" was used in place of the word "indictment." This court will not dwell upon such trivia. Suffice it to say that appellant was in no way prejudiced by the mistake, especially in the light of the fact that no finding was ever made as to his prior convictions.

The judgment is affirmed.

Ashburn, J., and Richards, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1958. Carter, J., Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.