280 So.2d 206

**Ricky KILGORE**

v.

**STATE.**

**8 Div. 331.**

Court of Criminal Appeals of Alabama.

June 26, 1973.

Jetton & Ogden, Guntersville, for appellant.

William J. Baxley, Atty. Gen., and George W. Royer, Jr., Asst. Atty. Gen., for the State.

HARRIS, Judge.

On March 1, 1972, appellant was convicted for selling certain drugs denounced by Act Number 252, General Acts 1967, page 633, cited as the Alabama Drug Abuse Control Act. He was sentenced to a term of five (5) years in the penitentiary. He gave notice of appeal but the record of this jury trial was not filed in this Court within the time provided by law and the rules governing appeals. The appeal was dismissed by this Court on the 5th day of September.

On the 30th day of November, 1972, appellant filed a petition for writ of error coram nobis in the Circuit Court of Marshall County alleging, among other grounds, that he was prevented from appealing said case because his attorney failed to perfect the appeal. The state confessed the petition and a new trial was granted. Upon being rearraigned, he interposed a not guilty plea, waived trial by jury, elected to be tried by the court on the transcript of the proceedings had on his first trial, and was again found guilty. He was in jail twenty-six (26) days following his first conviction. The trial judge sentenced him to four years and eleven months, giving him credit for thirty days. The record of the first trial is here for review following the second conviction. Counsel on appeal did not represent appellant in trial below.

Appellant contends that the judgment of conviction rendered by the trial court should be reversed on either of three grounds:

1. That the identification of the alleged narcotics was based on hearsay.

2. That the "laboratory assistants" of the State Toxicologist's were not qualified as experts.

3. That the identity of the informant was necessary for the defense of the accused, and not allowed by the trial court.

On the night of June 30, 1971, appellant was operating a service station close to a truck stop on top of the mountain near Guntersville in Marshall County. An undercover agent for the State of Alabama accompanied by a female named "Betty" drove to this station and parked a short distance from the gas pumps. At the time this couple arrived, appellant was servicing a truck. After fueling the truck, appellant went inside the station to complete the sale just made to the trucker. He then walked to the agent's car and opened the door to the passenger side and sat on the front seat. "Betty" made the introduction, whereupon appellant said to the agent, "What do you need?" The agent asked if he had any speed, meaning amphetamines. Appellant told him he had some black beauties, some bennies, and some footballs. The agent told him he would take a bottle of biphetamina—black beauty, Black RJS, a bottle of benzedrina or bennies, and fifteen tablets known as footballs. The total price was $53.00.

The agent put these drugs under lock and key and upon returning to Montgomery he sent them by certified mail to Mr. Van D. Pruitt, Assistant State Toxicologist in Huntsville, Alabama, where a laboratory analysis was conducted under Van D. Pruitt's direction and supervision. Pruitt testified that he did not *personally* make the chemical analysis but it was done by two of his assistants following the general outline of his instructions and that he was with them from time to time while the tests were being made but not continuously. Pruitt further testified that he could not say of his own knowledge whether or not a mistake was made by his assistants. He rendered an opinion based upon the findings made by the assistants that the drugs were either depressants or stimulants and were amphetamines; that the pills called "footballs" consisted of amphetamine in combination with phenobarbital. Amphetamine is one of the drugs condemned by the Alabama Drug Abuse Control Act when not prescribed by a licensed practitioner.

We do not sanction the method of making a chemical analysis of drugs that were carried out by Van Pruitt in this case. A man's liberty should not ride on the findings of laboratory assistants who are not subject to having their knowledge and technical skills tested by a thorough and searching cross-examination. Van Pruitt's testimony and opinion came in without an objection. There was no motion to exclude his testimony and the affirmative charge was not requested. An oral motion for a new trial was made but the grounds of the motion were not spelled out. In this state of the record, an otherwise serious testimonial question cannot be reached. As we have said many times, the jurisdiction of this court is appellate only and review is limited to matters upon which action or ruling in the trial court was invoked. Robinson v. State, 46 Ala. App. 684, 248 So.2d 583; Middleton v. State, 47 Ala.App. 130, 251 So.2d 627; Taylor v. State, 47 Ala.App. 285, 253 So.2d 354; Lowe v. State, 48 Ala.App. 740, 267 So.2d 529.

What we have said to this point disposes of appellant's first two claimed errors. We turn now to the matter of the unnamed informer other than her first name "Betty".

Public policy forbids the disclosure of an informant's identity unless it is essential to the defense set up by the accused and is necessary to show his innocence. Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151; Dixon v. State, 39 Ala.App. 575, 105 So.2d 354; Parsons v. State, 251 Ala. 467, 38 So.2d 209.

The primary purpose for the disclosure of an informer's name or identity is to prevent a miscarriage of justice in cases where an accused might have been entrapped into committing the offense for which he is prosecuted. The fundamental requirements of fairness compels disclosure in such cases where the informer plays a major and active part in bringing about the sale of narcotics and continues an active participant therein. The uncontradicted evidence in this case shows only that "Betty" introduced the agent to appellant and appellant took over from there asking the agent what he needed. The agent told appellant what he wanted to buy. Appellant told the agent the going price of the drugs and the agent gave appellant his order after price negotiations. Appellant got out of the agent's car, went inside the station and returned with the drugs and handed the package to the agent in exchange for $53.00. This was a plain case of sale and delivery. "Betty" was not an active participant in the criminal occurrence. Moreover, appellant took the stand and denied that he made the sale, and denied that he had ever seen the agent with or without a female companion. He testified that the first time he ever saw the agent was when he took the witness chair. The defense of entrapment was not available to appellant under these circumstances and disclosure of the female's name could not be compelled. Owens v. State, 291 Ala. 107, 278 So.2d 693, rendered May 31, 1973.

The two cases relied on by appellant showing he was entitled to the name of the informer, Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, and Portomene v. United States, 5 Cir., 221 F.2d 582, do not support the asserted claim. In *Roviaro,* John Doe, the informer, had helped to set up the criminal occurrence and had played a prominent part in it. Here, "Betty" made a simple introduction and nothing more. In *Portomene,* the informer actually made the purchase of opium from the defendant and was, therefore, an active participant in the illegal trade.

The agent testified that he first met "Betty" around noon on the day of the criminal occurrence, the night of June 30, 1971. He did not know her last name. Had the trial court ordered the witness to state her name, he could not have given any other name. He did not know her surname. A case in point is People v. Valencia, 156 Cal.App.2d 337, 319 P.2d 377.

Being unable to reach the serious question of Van D. Pruitt's testimony, and, finding the record free of error otherwise, the case is due to be affirmed.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., not sitting.