The defendant was indicted and convicted for conspiracy to commit arson in the second degree. Alabama Code 1975, Section13A-4-3 and Section 13A-7-42. Sentence was five years' imprisonment; one year to be served in the county jail, the remainder of the sentence suspended and the defendant placed on probation.
 I
The defendant argues that the trial court erred in admitting his confession into evidence because "it was made while appellant was under the influence of drugs and *Page 423 
was induced by the belief that he was being framed by the hope of favor if he cooperated with the investigating officers."
 A.
The evidence in this case does not show that the defendant was "so far dethroned that he was unable to understand the effect of what he was saying or to give a true account of his actions with respect to the alleged crimes" when he made his confession. C. Gamble, McElroy's Alabama Evidence, Section 200.14 (2) (3rd ed. 1977). McElroy contains an accurate and concise summary of the rules regarding the admission of a confession by an accused who is under the influence of narcotics or drugs.
 "The general rule is that a confession is not to be excluded even if the defendant was under the influence of drugs at the time he made it. Where the evidence fails to show that, at the time of making the confession, the defendant did not have mental capacity to know and remember the matters and happenings he then narrated, the confession is not inadmissible because he was addicted to narcotics. The fact that the accused was under the influence of drugs, however, is to be considered, along with other factors, in determining whether his confession was voluntary."
McElroy, Section 200.14 (4).
Detective Doug Aycock of the Sheffield Police Department testified that when he first saw the defendant he appeared "all right". Later in the day the defendant became "quite shooken" and "shook up". Aycock stated that the defendant "was nervous and he became real nervous. I couldn't really say he appeared to be high."
During the interrogation of the defendant by Detective Aycock the following occurred:
 "A. (Defendant): Because I've been strung out all my life. I ain't never quit taking drugs. I have nightmares at night. I am serious.
 "Q. (Detective Aycock): You're okay right now, though, aren't you? I mean as far as your mind?
"A. I'm high.
 "Q. Your mind is all right, though, isn't it? You know what you're talking about. You're telling the truth, right?
"A. Yes, sir."
In considering the totality of the circumstances surrounding the confession, we have listened to the tape recording of the confession itself. Although there is evidence that the defendant had taken some drugs before he made his statement, our review convinces us that there was substantial evidence fairly capable of supporting the inference that the statement was voluntarily and intelligently given. Therefore we find no abuse by the trial court in admitting the confession over this objection. Bufford v. State, 382 So.2d 1162 (Ala.Cr.App.), cert. denied, 382 So.2d 1175 (Ala. 1980).
 B.
The defendant testified, not at the hearing to determine the voluntariness of the confession but in his own defense, that his confession was induced by the belief that he was being framed. There was evidence that the confession was given freely, without any coercion of any type or any inducement or any hope of reward. Even where there is credible evidence to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge must be given great weight and need only be supported by substantial evidence and not to a moral certainty. Joshua v. State, 372 So.2d 885, 890
(Ala.Cr.App.), cert. denied, Ex parte Joshua, 372 So.2d 891
(Ala. 1979).
 C.
Before the confession was tape recorded, the defendant asked Detective Aycock for "help". Aycock testified:
 "(W)hen he (defendant) first came to me, he said, I want to tell you what happened. I want to clear it up, and I want you to help me."
* * * * * * *Page 424 
 "And at the time, I took him to be meaning that he was talking about the case when he said I need help. I told him that I didn't know what I could do. I would talk to the D.A., which I did, and later on, I got the opinion he was talking about not only the case, but the drug problem, too."
* * * * * *
 "I told him I would talk to the District Attorney about trying to help him."
* * * * * *
 "I told him if he wanted to tell us his part, that I couldn't promise him anything, but if he could help us I would talk to the District Attorney about helping him."
 * * * * * * "(A)nd if he would help us and probably testify against — give us information who all was involved, I would try to help him. . . ."
* * * * * *
 "I didn't ever tell him I would. I said, I'm going to try. I can't promise you anything. I don't have authority to promise you anything."
During the confession, the defendant stated that he wanted to "get off drugs" and Detective Aycock responded, "Well, I don't know what we can do, but we'll do what we can. We will make contacts for you, call the Mental Health Center or somebody. . . ."
The defendant's confession must be placed in its proper perspective. On two occasions, the defendant refused to make any statement to Detective Aycock. Then, without any inducement or solicitation from Aycock, the defendant, who had been arrested and released on bail, telephoned Detective Aycock and arranged to meet him.
 "(H)e (defendant) called me (Aycock) on the phone, . . . and said he wanted to talk to me. I told him to come to the station. He came up to the station, stated to me he wanted to clear up everything and he wanted to tell me what happened, could we help him. I told him I wasn't in a position to tell him if we could or could not."
Clearly the defendant's statement was not "extracted"; it was not obtained by any direct or implied promises, however slight. "(A) confession is not rendered involuntary by a promise of benefit that was solicited freely and voluntarily by the accused." Eakes v. State, 387 So.2d 855, 860 (Ala.Cr.App. 1978).
In conclusion, we find that the admission of the confession was not a violation of the defendant's right against self-incrimination under either the federal or state constitutions.
 II
The defendant also contends that the confession was admitted into evidence in violation of his constitutional right to counsel. He argues that "once a criminal defendant has retained an attorney any statement obtained from him may not be offered into evidence for any purpose unless the accused's attorney was notified and given a reasonable opportunity to be present."
Although Detective Aycock knew that the defendant had retained counsel and Aycock had been told by counsel not to talk to the defendant, this is not simply another factual situation controlled by Brewer v. Williams, 430 U.S. 387,97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Here the defendant, who was out on bond and not in custody, at least for purposes ofMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), voluntarily initiated the interrogation and the taking of his statement by telephoning Detective Aycock and then by coming to the police station of his own volition. This is clear from the beginning of the recorded confession where, after the defendant had been advised of his Miranda rights and stated that he understood them, the following occurred:
 "Q. Now, Ronnie, your attorney, Mr. Holt, told me not to talk to you. You came to me this morning on your free will, is that right?
"A. That's right.
 "Q. You came to my office and called me and said you wanted to see me? *Page 425 
"A. Yes.
"Q. I haven't asked you to talk to me?
"A. Yes, that's right.
"Q. Do you mind signing this right here, Ronnie?
"A. What?
"Q. Saying you understood what I read to you.
 "A. All right. I'm going to tell you what happened, and then I'm going to get me a lawyer."
The fact that a defendant has an attorney does not mean, as a per se rule, that law enforcement officials cannot procure a statement of any kind from the defendant without prior notice to, and the consent of, his attorney. Thompson v. State,347 So.2d 1371 (Ala.Cr.App.), cert. denied, 347 So.2d 1377 (Ala. 1977). There is absolutely no evidence that any officer willfully or by subterfuge even attempted to violate the request of defendant's counsel. Alexander v. State,370 So.2d 330 (Ala.Cr.App.), cert. denied, 370 So.2d 332 (Ala. 1979). The defendant was aware of his right to counsel and also knew that his retained counsel had told Detective Aycock not to question him. He voluntarily and knowingly waived his right to counsel. His confession was properly admitted into evidence.
 III
The defendant further argues for a reversal of his conviction on the ground that a portion of his statement related to a subsequent fire for which he was not indicted.
The defendant was charged with:
 "agree(ing) with Ann Morrow and John David Sauls to commit the crime of Arson 2nd Degree with the intent that conduct constituting said offense be performed and that John David Sauls did intentionally damage a building of Ann Morrow, by starting or maintaining a fire or causing an explosion, in furtherance of said crime."
On January 20, 1980, the Sheffield Fire Department was involved in two fires at the Furniture Barn. The fires were approximately twelve hours apart.
State's witness John Sauls testified that he set the first fire at the defendant's request. This fire was unsuccessful and did not do a great amount of damage to the building itself although the sprinkler system caused quite a bit of water damage to the furniture inside the building. Sauls also testified that the defendant had been hired to burn the building so someone could collect the insurance and "something was said about the lady that ran the Furniture Barn." Other evidence revealed that Ann Morrow was the owner of the business.
In his confession the defendant stated that he had nothing to do with the first fire. He admitted that, at the request of Ann Morrow and Diane Best, he did get Sauls to burn the building and that Sauls did in fact burn the building.
In this prosecution evidence of both fires was clearly admissible.
 "Evidence of other fires is not admissible where accused is not shown to be connected with the other burnings, or unless it tends to connect accused with the crime for which he is on trial, or to show that such fires, with that in question, were part of one connected scheme, purpose, or course of conduct of accused, or of a continuing offense, or that the fire in question was of incendiary origin and not accidental; or unless, together with the other evidence, it tends to show intent, guilty knowledge, motive, malice, or identity.
 "Likewise a previous attempt to burn a building, including the building involved in the crime charged, may be shown if the circumstances tend to implicate accused; and evidence tending to show that the prisoner, after the fire in question, attempted to burn the same building, is admissible as evidence of the identity of the author of the first fire, in that it indicates a renewal of the purpose which was frustrated by the extinguishment of the first fire."
22A C.J.S. Criminal Law, Section 691 (3) (1961). *Page 426 
See also Martin v. State, 28 Ala. 71 (1856); Moreland v. State,373 So.2d 1259 (Ala.Cr.App. 1979).
 IV
The defendant argues that reversible error occurred during the closing argument when the prosecutor stated that the defendant was guilty of arson. From the record:
 "MR. SLUSHER (Defense Counsel): I am going to object to that line of argument of him being guilty of arson as being prejudicial. He is not charged with arson.
"THE COURT: Just argue what he is charged with.
 "MR. SLUSHER: I would like to move for a mistrial. We think —
"THE COURT: Overruled."
From the record we cannot tell exactly what the prosecutor actually stated and the context in which it was said. The trial judge was in a much better position to judge the nature of the remark and its propriety. After considering all the evidence in this case we do not see how the alleged remark, even if made as alleged, could have prejudiced the defendant. A.R. A.P., Rule 45.
 V
The defendant argues "that the court's oral charge did not adequately and fairly state the principles of law affecting all aspects of the case, and in particular, the law relating to conspiracy." The defendant does not specify which of his forty-one requested charges were improperly refused.
A review reveals that the oral charge of the trial court fairly and substantially, though briefly, covered the elements of the offense of conspiracy. We find no error in the refusal of the requested charges.
We have searched the record and found no error prejudicial to the substantial rights of the defendant. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur. *Page 665